CLARK *v.* FEY.

*(Supreme Court, General Term, First Department. January 28, 1889.)*

1. SALE—REFUSAL TO ACCEPT GOODS—PLEADING AND PROOF.
    In an action for failure to take goods under a contract, which provided that they should be shipped during a certain period, when plaintiff does not show a shipment and tender of the goods to defendant within that time, the complaint is properly dismissed. Following *Hill* v. *Blake,* 97 N. Y. 216.

2. SAME—RIGHT TO RESCIND—STATUTE OF FRAUDS.
    A parol promise to take the goods, made by defendants after the expiration of the period, being within the statute of frauds, and not binding, does not deprive defendants of the right to rescind. Following *Hill* v. *Blake,* 97 N. Y. 216.

Appeal from circuit court, New York county.

Action by Clarence H. Clark against John Fey. Complaint dismissed, and plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*L. W. Russell,* for appellant.    *J. E. Parsons,* for respondent.

BRADY, J.    This action was brought for damages alleged to have been sustained by the defendant's failure to take and pay for 500 tons of old iron "T" rails sold to him by the plaintiff.    The contract is as follows:

"NEW YORK, Dec. 29, 1879.

*"John Fey, Esq.*—DEAR SIR: We have this day sold you old iron 'T' rails on the following terms, viz.:

"Quantity. Five hundred (500) tons of 2,240 pounds each.

"Brand.    (Accepted, John Fey.)

"Quality.

"Price.    ($37.50) Thirty-seven dollars and fifty cents per ton of 2,240 lbs.

"Delivery. Shipment from the other side, January, $^{\text{and}}_{\text{or}}$ February, $^{\text{and}}_{\text{or}}$ March, seller's option.

"Payment. Thirty-two ($32.50) dollars and fifty cents cash, according to invoice weights on handing order on vessels, balance on handing weigh-master's return.    After naming vessels, the sellers shall not be responsible for non-arrival of cargoes, and this contract shall be considered canceled to that extent.                    Yours, faithfully,        CLARK, POST & MARTIN."

The complaint contains the necessary facts to show the existence of a cause of action, and, among other averments, that the defendant accepted the iron in June, 1880, but requested the plaintiff to hold it in store for his account, cost, and risk, and to extend the time for payment, and for the actual manual delivery of the rails, and that this request was acceded to, and it was arranged that the rails so tendered should be held in store without any agreement for any fixed or definite time.    The defendant, by his answer, denied that there was any other or different agreement than the contract for the purchase of the rails, or that the plaintiffs performed or tendered performance of the conditions of the contract on their part, or offered to deliver the rails.    It appeared that the market for rails from December, 1879, up to the last of March following advanced to $45.50 a ton, and that the price was the highest from the 15th to the 20th of the last month named, when it began to decline gradually to $40 a ton, on the 10th of April.    On the 15th of that month there was a very decided decline, reaching $23 to $24 a ton.

Mr. Post, on behalf of the plaintiffs, testified that from the 15th to the 20th of April the defendant called upon him at his office, and said that in consequence of the price of old rails falling from $45 to practically $23 a ton, it was

a very difficult thing for him to take these rails; that he could not sell them to anybody; and wanted him to be as easy as he could, and to carry the rails, and give him some rails later; to which Post answered that he would do everything he could to accommodate him, and carried the rails for him until, he thought, some time in June, when he sent for defendant, and told him, the contracts being on joint account, the other persons interested insisted that the rails should be taken, and the storage paid. Mr. Post then advised Mr. Fey, he says, that they were going to set aside 500 tons of rails for .him; and he said, "That is all right; fix it up that way." It appears, however, that within the period allowed for that purpose the iron contracted for did not arrive in the city of New York. It was not shown that the plaintiffs, between January 1st and March 31st, had placed on vessels such iron as the contract called for, not under engagement to other persons, which could be designated for the defendant. The plaintiff, it is true, proved by Mr. Post that they had on hand about 18,000 tons of rails which had arrived in February and March, which was before the decline in the price. There was evidence that these rails were shipped during the period mentioned in the contract. They were not, however, tendered to the defendant. The plaintiffs also gave in evidence some bills of lading showing the shipment of iron, but some of them were not made until the month of April, and those relating to shipments in January, February, and March were of iron which was not tendered to the defendant. Indeed, there was no positive reliable evidence that it had been shipped.

The case, therefore, is one in which a contract was made to ship during a certain period, viz., January, February, and March, a stated amount of iron; the shipment of which was not made during the period allowed for the purpose; and there was therefore no compliance with the terms of the contract. The case is regarded as embraced within the adjudication of *Hill* v. *Blake*, 97 N. Y. 216, upon which the dismissal of the complaint was mainly based, and as this is a decision of the court of last resort it may be entirely unnecessary to cite another authority. The court in that case said of a contract which required shipment in December, 1879, or January, 1880, seller's option, that the omission to furnish the iron shipped in these months authorized the defendant to rescind the contract. And a similar decision can be found in *Norrington* v. *Wright*, 115 U. S. 188, 6 Sup. Ct. Rep. 12, in which the authorities bearing upon a kindred question are reviewed *in extenso*, and the case just cited is referred to. It was substantially held in that case that in a mercantile contract a statement descriptive of the subject-matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty or condition precedent, upon the failure or non-performance of which the party aggrieved may repudiate the whole contract, and that this applied even where the contract had been partially performed, and the goods accepted by the defendant in ignorance that there had been a failure of some shipments within the period allowed, if the right to rescind is exercised before accepting or paying for the additional merchandise. The learned counsel for the appellant sought ingeniously to distinguish between the contract in this case and that in *Hill* v. *Blake*,—of course, for his client's benefit; but a critical examination of them has failed to disclose any substantial difference between them. It was supposed by the appellants that the subsequent agreement to which Mr. Post testified deprived the defendant of the right to a strict compliance with the contract and of the right to rescind; the answer to which is that assuming the agreement to have been made it was within the statute of frauds, and not binding. On this proposition *Hill* v. *Blake*, *supra*, is also a decisive and controlling adjudication. There it appeared that an offer was made in the shape of a letter sent to the defendant, the purport of which was that he could be given his iron out of a vessel named, probably in the week following the conversation, or a vessel named to sail from Great Britain during that month, to which Mr. Blake replied; "Well, I don't want

the iron now; the later shipment will suit me better," to which answer was made by the plaintiff, "Very well; that fixes it," and the parties separated. In discussing the effect of that conversation, and stating that it could not be doubted that the omission to furnish iron shipped in the months named in the contract authorized the defendant to rescind the contract, the court said that to admit this would vary by parol the substance of a contract valid only because in writing, and that this could not be done without a violation of the statute. The learned judge said. "I do not think it necessary to inquire whether the mere time of performance might be waived by parol. That is not the question. The only one before us relates to a substantial matter,—to one affecting the identity of the thing sold,—and without mention of which there could have been no contract, and which, although agreed upon, would have been invalid if not in writing." In that case, as in this, there was no element of estoppel which would authorize the court to reject the principle of law established by the cases referred to, and permit the plaintiff to recover. It is thought for these reasons that the learned judge at circuit was right in disposing of the controversy upon the cases cited. The failure of the plaintiffs to perform their contract, according to its terms, deprived them of any cause of action. They undertook to ship within a certain period, for the defendant, a certain amount of iron, and the only manner in which that contract could be performed according to the rules of law governing the relations growing out of such an instrument was to do the thing required by it. The judgment should be affirmed, with costs. All concur.